FILED
UNITED S...
AUG 1 7 2001

... ...
C...

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PATRICIA FRENCH,

    Plaintiff,

vs.

JAMES BARNER, MARY MOLINA-MESCALL,
and THE CITY OF ALBUQUERQUE,

    Defendants.

CIV. NO.
**CIV-01 947 MV**

**RICHARD L. PUGLISI**

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
## AND BREACH OF CONTRACT

Plaintiff brings this complaint for damages under Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. §§ 1981a, 2000e-2, and 2000e-5 ("Title VII"), the Equal Protection

Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and

state law, and for her complaint states the following:

## JURISDICTION AND VENUE

1.    Jurisdiction is based on Title VII and 42 U.S.C. § 1983.

2.    On July 26, 2000, Plaintiff filed a charge of discrimination on the bases of race,

color, and retaliation against Defendant the City of Albuquerque with the Equal Employment

Opportunity Commission ("EEOC"). Plaintiff received Notice of Right to Sue from the EEOC

no earlier than May 21, 2001. Thus, Plaintiff has timely satisfied the statutory prerequisites to

filing this lawsuit.

3.     Venue is proper in this district because all of the acts complained of occurred in New Mexico, and all of the relevant evidence and witnesses are located in New Mexico.

## PARTIES

4.     Plaintiff is a black female resident and citizen of the state of New Mexico.

5.     Defendant the City of Albuquerque operates the Albuquerque Police Department ("APD") a governmental entity.

6.     At all relevant times, Defendant James Barner was the Director of the Records Division at APD and acted within the scope of his employment and under color of state law. Defendant Mary Molina-Mescall was at all relevant times the Deputy Director of the Support Services Division, and Defendant Barner's direct supervisor.

## FACTUAL BACKGROUND

7.     Plaintiff began working for Defendant APD as a data entry operator  in September 1988.  She was praised for her work, given raises, and promoted.

8.     In February 1992, the then Director of Records, Ida Grant, promoted Plaintiff to the position of supervisor.  In this position, Plaintiff directed approximately eighteen people. Plaintiff continued to be praised for her work in this position.

9.     In early 1999, Defendant the City of Albuquerque hired Defendant Barner as the Director of Records at APD.  As the Director of Records, Defendant Barner was Plaintiff's supervisor, and he had the power to control the terms and conditions of her employment.

10.     Defendant Barner immediately started singling Plaintiff out, assigning her menial tasks, and belittling and reprimanding her in front of her subordinates.

11.     For instance, shortly after beginning his job, Defendant Barner held a meeting for purposes of assigning "special projects" for supervisors.   Rather than assign Plaintiff a legitimate project in line with her position and experience, Defendant Barner informed Plaintiff that it would be her job to get the carpets cleaned.

12.     Defendant Barner stated to two other supervisors that his reason for assigning Plaintiff cleaning tasks was that she "was used to going through the back door," referring to the historical treatment of black Americans.

13.     Since becoming a supervisor, Plaintiff had been responsible for interviewing candidates for records technicians in her unit.  Defendant Barner removed Plaintiff from any involvement in interviewing candidates, and assigned a non-black supervisor to interview candidates for open positions in Plaintiff's unit.  When Plaintiff asked him why he had stripped the task from her, he stated that Plaintiff was always "spear-chucking" everything.

14.     Plaintiff told Defendant Barner that she did not appreciate his use of racial slurs.

15.     Shortly thereafter Defendant Barner began to give employees subordinate to Plaintiff authority over her.  This was both demeaning and inappropriate.  Plaintiff again complained to Defendant Barner that she believed that he was discriminating against her because of her race.  Defendant Barner told Plaintiff if she did not like it she could "bring on the attorneys."

16.     In May 2000, Defendant Barner began an inquisition of Plaintiff, investigating her and interviewing people based on a complaint that was allegedly brought against her by secretarial employees.  Defendant Barner conducted an investigation and numerous interviews

3

without first informing Plaintiff, in violation of APD's standard operating procedures. Defendant Barner refused to provide Plaintiff with a copy of the complaint against her so that she could address the charges. On information and belief Defendant discussed the fact of the complaint and the investigation with his secretary, violating confidentiality policies.

17.     Defendant Barner made disparaging and derogatory remarks about Plaintiff to other employees.

18.     Before Plaintiff filed her EEOC charge against Defendant Barner, she informed him that she was going to file a complaint against him.

19.     After Plaintiff filed her EEOC charge, Plaintiff requested to be rescheduled to work four, ten hour days. Defendant Barner refused Plaintiff's request.

20.     Before Plaintiff filed her EEOC charge, Defendant Barner had stated that all supervisors would be required to work four, ten hour days. When another supervisor complained about this, Defendant Barner decided that he would permit supervisors to work four, ten hour days at their option. All non-black supervisors who requested to be reassigned to four, ten hour days were permitted to do so.

21.     Because Defendant Barner refused to schedule Plaintiff to work four, ten hour days she was unable to attend the NFL games of the nephew whom she raised.

22.     When Plaintiff asked Defendant Barner why she was the only supervisor whose request had been denied, he lunged at her as if he was going to physically attack her. Plaintiff ran out of Defendant Barner's office to avoid being battered.

4

23.     In August 2000, Defendant Barner publicly accused Plaintiff of stealing equipment and furniture from other departments.

24.     Defendant did not treat similarly situated non-black employees this way.

25.     Indeed, after Plaintiff filed her EEOC charge, Defendant Molina-Mescall began slandering and harassing Plaintiff, spreading rumors and gossiping about Plaintiff's motives for filing an EEOC charge with Plaintiff's colleagues and others within her department.  This conduct adversely affected Plaintiff's job by causing her to lose authority and status within her department, making it even more difficult for Plaintiff to function as a supervisor.

26.     Defendants' actions as set forth above caused Plaintiff damages and injuries, including physical pain and suffering, emotional and psychological distress, humiliation, embarrassment, and mental anguish.

### COUNT I:  TITLE VII RACE DISCRIMINATION CLAIM AGAINST DEFENDANT THE CITY OF ALBUQUERQUE

27.     Plaintiff incorporates paragraphs 1 through 26 as though fully set forth herein.

28.     Plaintiff is a member of a protected class, *i.e.*, African American.

29.     Plaintiff was satisfactorily performing her job duties of Supervisor within the APD records department.

30.     Defendants made disparaging, racially charged slurs about Plaintiff, assigned her menial tasks, belittled her, effectively demoted her by placing subordinates in authority over her, and singled her out by refusing to allow her to work four, ten hour days.  Defendants treated Plaintiff disparately Defendants did not subject similarly situated non-African American supervisors to these adverse employment actions.

5

31.     Defendant the City of Albuquerque, as Defendant Barner's employer, intentionally subjected Plaintiff to adverse employment actions because of her race in violation of Title VII.

32.     Defendant the City of Albuquerque had no legitimate, nondiscriminatory, non-pretextual reason for subjecting Plaintiff to these adverse employment actions.

33.     Defendant the City of Albuquerque's conduct in violation of Title VII caused Plaintiff damages, including but not limited to emotional and psychological distress, humiliation, embarrassment, and mental anguish.

WHEREFORE, Plaintiff seeks compensatory damages and attorneys' fees and costs against Defendant the City of Albuquerque for race discrimination in violation of Title VII.

## COUNT II:   RETALIATION CLAIM
## AGAINST DEFENDANT THE CITY OF ALBUQUERQUE

34.     Plaintiff incorporates paragraphs 1 through 33 as though fully set forth herein.

35.     Defendant the City of Albuquerque intentionally subjected Plaintiff to adverse employment actions because she engaged in protected opposition to Defendant Barner's racial discrimination, including complaining to Defendant Barner and asking him to cease his discriminatory conduct, and filing an EEOC charge.   These adverse employment actions include refusing to permit Plaintiff to work four, ten hour days, accusing her of stealing, slandering Plaintiff and causing damage to her reputation.

36.     Defendant the City of Albuquerque had no legitimate, nondiscriminatory, non-pretextual reason for subjecting Plaintiff to these adverse employment actions.  Defendants'

retaliatory conduct is causally connected to Plaintiff's protected opposition to racial discrimination.

37.     Defendant the City of Albuquerque's conduct in violation of Title VII caused

Plaintiff damages, including but not limited to lost benefits, emotional and psychological distress,

humiliation, embarrassment, and mental anguish.

WHEREFORE, Plaintiff seeks compensatory damages and attorneys' fees and costs

against Defendant the City of Albuquerque for retaliation in violation of Title VII.

## COUNT III:   EQUAL PROTECTION CLAIM UNDER 42 U.S.C. § 1983
## AGAINST DEFENDANTS BARNER AND THE CITY OF ALBUQUERQUE

38.     Plaintiff incorporates paragraphs 1 through 37 as though fully set forth herein.

39.     Defendants intentionally discriminated against Plaintiff by assigning her

demeaning and menial tasks, making racial slurs, slandering Plaintiff, belittling her, investigating

her, violating her privacy rights, refusing to allow her to work four, ten hour days, and

constructively stripping her of her authority because Plaintiff is African-American. Thus,

Defendants intentionally discriminated against Plaintiff in the context of public employment

because of Plaintiff's race.

40.     Defendants' actions as set forth above violated Plaintiff's rights under the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution.

41.     Defendants' wrongful actions as set forth above caused Plaintiff damages and

injuries, including but not limited to damage to her reputation, emotional and psychological

distress, humiliation, embarrassment, and mental anguish.

WHEREFORE, Plaintiff seeks compensatory damages and attorneys' fees and costs against Defendant Barner, and compensatory damages, punitive damages, and attorneys' fees and costs against Defendant the City of Albuquerque.

## JURY DEMAND

11.    Plaintiff hereby demands a jury trial on all counts so triable.

Respectfully submitted,

Mary Y.C. Han
Kirtan Khalsa
KENNEDY & HAN, P.C.
Attorneys for Plaintiff
1122 Central Avenue SW
Albuquerque, New Mexico 87102
(505) 842-8662